**Opinion filed July 10, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00020-CV

_____

## IN THE INTEREST OF M.H., A.H., AND D.W.H., III, CHILDREN

**On Appeal from the 50th District Court**

**Baylor County, Texas**

**Trial Court Cause No. 10,841**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and father of M.H., A.H., and D.W.H., III. The mother timely filed an appeal.[1] In four points of error on appeal, she challenges the sufficiency of the evidence to support termination. We affirm.

### I. *Issues on Appeal*

In all four points of error, the mother contends that the trial court's findings were not supported by clear and convincing evidence. In the first point, she

---

[1]The father voluntarily relinquished his parental rights and did not appeal.

challenges the trial court's finding that termination was in the best interest of the children. In the second, third, and fourth points, the mother challenges the findings that she engaged in endangering conduct, failed to comply with the provisions of a court order, and placed the children in endangering conditions.

## II. *Termination Standards and Findings*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the

2

agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed three of the acts listed in Section 161.001(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; and that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the children.

### III. *Evidence at Trial*

In 2011, when the Department initially became involved with the children in this case, there were concerns about the parents' supervision and care of the children. A family-based safety plan was instituted to help the family. However, the father was later incarcerated, and the mother found it even more difficult to maintain stable living conditions. The children were ultimately removed from the

care of their parents in July 2012, when the children were still very young: ages four, two, and one.

At the time of removal, the children had behavioral, eating, and dental issues. They threw excessive tantrums, were extremely scared of the dark, and ate toilet paper. A.H. had bad cavities and had to have dental surgery after being placed in foster care. M.H. indicated that her parents fought and then had sex in the children's presence. M.H. also said that the parents left the children home alone at the trailer and "didn't come back and get us." The father admitted that he and the mother left their young children home alone while the parents went out and partied. He also admitted that he was "on stuff" and "did things [he] shouldn't have done." The mother admitted that she used drugs while the children were in her care but were asleep. The mother also admitted that, at the time of removal, she was unable to care for her children.

Upon removing the children, the trial court ordered the mother to participate in various services that were necessary for her to obtain the return of her children. The uncontroverted evidence at trial showed that the mother did not complete the court-ordered services and, thus, failed to comply with the trial court's order. The mother took seven random drug tests during the removal period and failed all seven. At various times, she tested positive for marihuana, cocaine, amphetamine, and methamphetamine. The mother also failed to maintain stable housing, failed to complete a parenting class, and failed to participate in a substance abuse treatment program. Although the mother asserts that her failure to comply was due to her poverty, a Department caseworker testified that the mother was noncompliant because she chose not to work through her service plan. The record shows that the Department attempted to work with the mother and offered her various services, including transportation and help with her budget, but that the mother did not take advantage of the services offered to help her comply with her

4

service plan. At the time of trial, the mother had been working for about five months and had obtained a one-bedroom apartment from the local housing authority. Despite being employed, the mother failed to pay her monthly rent of only $50 for any of the months she had lived there; she relied on various charitable organizations to pay her rent for her. Furthermore, no three-bedroom apartments were available, and the housing authority would not permit the children to live with the mother in a one-bedroom apartment.

Testimony from the foster mother indicated that the children have adjusted well to foster care but that they crave attention. Two Department employees also testified that the children were doing well in foster care. The Department's goal for the children is termination and unrelated adoption. Although the foster parents with whom the children had been living did not intend to adopt the children, the children were adoptable. The Department has located a suitable family that wants to adopt the children. At the time of trial, the potential adoptive family had had five visits with the children; those visits went well. The Department intended to transition the children slowly into the adoptive family's home. Services would be available to assist the adoptive family. Although the mother and two family members indicated that the children were bonded with the mother and that termination would not be in the best interest of the children, other evidence reflected a lack of any such bond between the mother and the children. The Department's conservatorship caseworker testified that she believed termination would be in the best interest of the children.

IV. *Analysis*

*A. Mother's Conduct*

The record contains clear and convincing evidence that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children who had been in the

5

conservatorship of the Department for more than nine months and had been removed due to abuse or neglect. The mother failed all seven drug tests during the removal period, and she failed to complete the parenting class, participate in a drug treatment program, and maintain stable housing as required by her family service plan and ordered by the trial court. Section 161.001(1)(O) does not "make a provision for excuses" for the parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)). Furthermore, the mother's excuses were invalidated by testimony indicating that her choices, not her socio-economic status, caused her noncompliance with the trial court's orders. Clear and convincing evidence also reflected that the children had been removed due to abuse or neglect and that they had been in the care of the Department for well over nine months. Consequently, the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O). The mother's third point of error is overruled.

Furthermore, there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's well-being was the direct result of the parents' conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending

6

conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265. The evidence showed that the mother took illegal substances while responsible for the care of the children and that she left her young children home alone while she went out and partied. Based on the record in this case, we hold that the evidence was legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E). The mother's second point of error is overruled.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required and because we have held that the evidence is sufficient to support the trial court's findings under subsections (E) and (O), we need not address the mother's fourth point in which she challenges the finding made pursuant to subsection (D). *See* TEX. R. APP. P. 47.1.

## B. Children's Best Interest

We also hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of each of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the mother and the couple seeking to adopt the children, the plans for the children by the Department, the instability of the mother's home, the stability of the children's placement and proposed placement, the acts and omissions indicating that the parent-child relationship was not a proper one, and the acts of the mother that endangered her children, we hold that the evidence is sufficient to support the

finding that termination of the mother's parental rights is in the best interest of the children.  *See id.*  The mother's first point of error is overruled.

V. *This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


July 10, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.